UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MILTON BROWN,

           Plaintiff,           Case No. 2:14-cv-136

v.                                       Honorable Gordon J. Quist

JEFFREY WOODS et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against all of the Defendants, except for Plaintiff's retaliation claims against Defendants Williams and McDonald. Accordingly, the Court will order service of the complaint against Defendants Williams and McDonald.

**Factual Allegations**

Plaintiff currently is incarcerated in the Carson City Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated in the Chippewa and Alger Correctional Facilities. In his *pro se* complaint, Plaintiff sues the following Chippewa employees: Warden Jeffrey Woods; Corrections Officers (Unknown) Williams, (Unknown) Pawley, and (Unknown) McDonald; Inspector (Unknown) Hubbard; Hearing Investigator John Doe; Resident Unit Manager (Unknown) Mansfield; Acting Assistant Deputy Warden (Unknown) Bailey; and Assistant Deputy Wardens (Unknown) Mackie and (Unknown) Horton. Plaintiff also sues the following Alger employees: Assistant Deputy Warden (Unknown) Rutter, Captain (Unknown) Taskila, Inspector (Unknown) Contreras, and Assistant Resident Unit Supervisor (Unknown) Crumell. In addition, Plaintiff sues Michigan Department of Corrections (MDOC) Hearing Officer Thomas Mohrman, MDOC Hearing Administrator Matt Young and MDOC Grievance Coordinator John Doe.

Plaintiff alleges that on August 17, 2011, Defendant Taskila wrote a false Notice of Intent (NOI) to classify Plaintiff to administrative segregation because Plaintiff allegedly had attempted to poison Officer Hubble by putting something in the officer's drink bottle. Plaintiff denied the charge and urged Taskila to check the video from the security camera. Taskila allegedly told Plaintiff that if the video showed that Plaintiff was innocent, he would not be placed in segregation. However, Defendant Rutter told Plaintiff that he did not care what the video showed, Rutter was not letting Plaintiff out of the "hole." Plaintiff submitted questions to the hearing investigator assigned to the NOI. The hearing on the NOI originally was scheduled for August 25, 2011, but was postponed.

On August 25, Defendant Contreras wrote a Class II misconduct ticket against Plaintiff for theft. Later that day, Defendant Crumell delivered the misconduct report to Plaintiff and informed him that it had been elevated to a Class I charge.[1] Crumell told Plaintiff that his "boss" told him to elevate the charge to a Class I misconduct, but would not tell Plaintiff his bosses' name. A hearing on the misconduct charge was held the following day by Defendant Mohrman. Plaintiff's request for a hearing investigator was denied and Defendant Mohrman denied Plaintiff's request to call witnesses before finding Plaintiff guilty of the charge. At the hearing, Plaintiff learned that the NOI to place him in segregation had been dismissed. He contends that the misconduct charge was improperly elevated to Class I in order to keep him in segregation. Plaintiff further claims that Defendant Young denied him the right to call witnesses on June 6, 2012, presumably in connection with Plaintiff's motion for a rehearing on the misconduct conviction.

On November 21, 2011, after Plaintiff had returned to the general population, he asked Defendants Mansfield and Horton for protection because he feared being assaulted by other prisoners in the general population. Mansfield and Horton denied his request and Plaintiff wrote a grievance against them. Plaintiff renewed his request the following day with Defendant Bailey, who also refused to transfer him to protective custody. On November 29 or 30, Plaintiff made another request for protection, but Defendants Bailey and Thompson denied his request and ordered him to return to the general population. Plaintiff refused the orders because he did not want to risk being assaulted. As a result, Plaintiff allegedly received three Class I misconduct tickets for disobeying a direct order.

---

[1] Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA).

Plaintiff alleges that on December 20, 2011, Defendant Pawley told nurse Amy that Plaintiff wanted Pawley to see his (Plaintiff's) penis. Plaintiff contends that Pawley's statement was intended to degrade and harass Plaintiff. According to Plaintiff, Defendants Pawley, Williams and McDonald repeatedly harassed him and treated him in a degrading manner. Plaintiff wrote several grievances against the officers on January 8 and 9, 2012, and complained to their supervisor, Defendant Mansfield. After Plaintiff filed two grievances against Defendant Pawley, Pawley came to Plaintiff's cell and said (verbatim), "keep kiting cup cake its not gone help you, just like nobody gone be able to help you if you ever go to Round Unit I will be waiting." (Compl., docket #1, Page ID#9.) Later that evening, Pawley made reference to Plaintiff's prior convictions for criminal sexual conduct (CSC). Plaintiff also wrote a grievance against Mansfield for failing to take corrective action after Pawley read Plaintiff's file and then talked loudly in the unit about the fact that Plaintiff had two CSC convictions. Plaintiff further claims that on April 21, 2012, Defendant Pawley took all of the personal property that Plaintiff had in segregation. When Plaintiff got his duffel bag back, all of the property that Pawley had confiscated was gone.

Plaintiff claims that on January 20, 2012, Defendants Williams and McDonald called him a "baby raper" and Williams said, "[Y]eah I got something for him anyway he like to write grievances." (Compl. ¶ 30.) At approximately 3:00 p.m., Defendants Williams and McDonald "trashed" Plaintiff's cell and ripped up some of Plaintiff's photos. Later that afternoon, Defendant Williams refused to give Plaintiff his food tray. Plaintiff contends that Williams' conduct was retaliation for the grievance Plaintiff filed on January 8. Plaintiff filed a grievance against Williams, which was denied at Step I by ARUS Deary.[2] It appears from Plaintiff's allegations that Defendant

---

[2] Deary is not named as a Defendant in this action.

Mackie denied the Step II appeal. Plaintiff further claims that Defendant Mackie failed to interview him regarding a grievance he filed against Williams and simply adopted Williams' version of the events. The John Doe MDOC Grievance Coordinator denied Plaintiff's Step III appeal.

On January 21, 2012, Plaintiff received a misconduct ticket from Defendant Williams for possession of a weapon. Williams claimed that Plaintiff had a 9" piece of metal in his coat. Plaintiff alleges that he was denied a hearings investigation on the charge. Plaintiff alleges that on January 23, Defendant McDonald came to his cell and said (verbatim), "[Y]ou're next in the observation cell I see the knife wasn't enough for you and don't worry about eating tonight because you won't." (Compl. ¶ 33.) True to his word, Williams did not give Plaintiff a dinner tray that evening. Then, on January 30, 2012, Williams said to Plaintiff, "I thought you said you were going home Brown," to which Plaintiff responded, "F*** you." (Compl. ¶ 39.) As Williams walked away, he said, "[L]ast time you said you didn't care you were going home but I guess you not gone make it now with a weapon, all you had to do was keep your mouth shut." (*Id*.) As a result of the weapons conviction, Plaintiff claims that he received a 12-month continuance from the parole board in February 2012.

Plaintiff claims that on February 1, 2012, he was placed on "no out of cell movement" in retaliation for his grievances, although prison officials claimed that the cell confinement was imposed as a result of the January 20 weapons misconduct and a January 30, 2012 misconduct charge for threatening behavior. On February 10, 2012, McDonald allegedly stated (verbatim), "Aye, what's up Brown how are your grievances turning out, I thought you wanted to f*** me up, your slot was just open for laundry, you just all talk coward keep writing your grievances they not gone get you no where spell my name right." (Compl ¶ 47.) Plaintiff maintains

that Defendants Williams and McDonald repeatedly harassed him and brought false misconduct charges against him in retaliation for his grievances against them.

Plaintiff contends that Defendant Woods routinely denied his Step II grievance appeals without interviewing Plaintiff or conducting an investigation. Plaintiff also claims that Defendants Woods and Hubbard failed to conduct a prompt and thorough investigation of Plaintiff's complaints and grievances. Likewise, Plaintiff alleges that the John Doe MDOC Grievance Coordinator routinely denied his Step III grievance appeals.

Plaintiff seeks punitive and compensatory damages of $500,000.00.

## Discussion

### I. Immunity

Plaintiff sues Hearings Officer Mohrman and Hearings Administrator Young for allegedly denying his right to call witnesses in misconduct proceedings. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Because Plaintiff's claims against Defendants Mohrman and Young arise from actions taken in their capacities as

hearings officers, they are absolutely immune from suit for damages in this case. Accordingly, they must be dismissed from this action.

### II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant John Doe Grievance Coordinator

Plaintiff sues the "John Doe" MDOC Grievance Coordinator for denying his Step III grievance appeals. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process. Consequently, the John Doe MDOC Grievance Coordinator will be dismissed.

### B. Defendants Woods, Hubbard and Mackie

Plaintiff fails to make any specific factual allegations against Defendant Warden Woods, other than his claims that Woods denied his Step II grievance appeals without conducting a prompt and thorough investigation. He also alleges that Defendants Woods and Hubbard "failed to perform their duties" after Plaintiff sent them kites and grievances concerning the unconstitutional

conduct of Defendants Williams and McDonald. (Compl., Page ID#14.) Plaintiff further claims that Defendant Mackie failed to interview him regarding a grievance he filed against Williams and simply adopted Williams' version of the events.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Woods, Hubbard, or Mackie engaged in any active unconstitutional behavior. Because Plaintiff fails to state a claim against Woods, Hubbard or Mackie, they must be dismissed from this action.

            **C.**     **Defendants Taskila and Rutter**

Plaintiff alleges that Defendant Taskila wrote a false NOI to classify Plaintiff to administrative segregation for allegedly attempting to poison Officer Hubble by putting something in the officer's drink bottle. Plaintiff further claims that Defendant Rutter told Plaintiff that he did not care what the video evidence showed, Rutter was not letting Plaintiff out of the "hole."

Plaintiff's allegations against Defendants Taskila and Rutter implicate the Due Process Clause. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.

*See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir.1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

In this case, Plaintiff never was placed in segregation on the NOI because it was dismissed. Even if he had been transferred to segregation as a result of the NOI, he does not allege how his placement imposed an atypical and significant hardship. *See Sandin,* 515 U.S. at 484. Plaintiff, therefore, fails to state a claim against Defendants Taskila and Rutter. Consequently, Defendants Taskila and Rutter also will be dismissed from this action.

### D.  Defendants Crumell and Contreras

Plaintiff suggests that Defendants Contreras and Crumell were involved in a plot to falsely charge and convict him of a Class I misconduct for theft in order to keep him in segregation. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary

proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 484. Plaintiff has not identified any significant deprivation arising from his convictions. As previously discussed, Plaintiff's placement in segregation as a result of the misconduct convictions does not impose an atypical and significant hardship. *Id*. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Because Plaintiff fails to state a due process claim arising from the misconduct conviction, Defendants Crumell and Contreras must be dismissed.

### E. Defendants Mansfield, Horton, Bailey & Thompson

Plaintiff claims that in November 2011, after he was returned to the general population, he made several requests for protection because he feared being assaulted by other prisoners in the general population, but his requests were denied by Defendants Mansfield, Horton, Bailey and Thompson. Plaintiff refused the orders because he did not want to risk being assaulted in the general population. As a result, he received three Class I misconduct tickets for disobeying a direct order. Plaintiff further claims that Defendant Mansfield failed to take corrective action after Plaintiff complained about the conduct of Defendants Pawley, Williams and McDonald.

In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to

a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *see also Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard [ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 829. While Plaintiff generally asserts that he sought placement in protective custody because he feared assault by other prisoners, he does not make any allegations about a specific threat of assault that he disclosed to Defendants Mansfield, Horton, Bailey and Thompson. In the absence of specific factual allegations regarding the alleged danger that Plaintiff faced in the general population, this Court cannot find that Defendants were deliberately indifferent to a substantial risk of serious harm. *See Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that the plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") Plaintiff, therefore, fails to state a claim against Defendants for denying his requests for placement in protective custody.

Plaintiff's allegations further suggest that Defendants violated his due process rights by bringing three Class I misconduct charges against Plaintiff for disobeying their orders to return to the general population. As previously discussed, Plaintiff does not have a liberty interest in the misconduct proceedings because the conviction(s) did not result in the loss of good-time credits. *See Thomas*, 481 U.S. at 434. Moreover, Plaintiff has not identified any significant deprivation arising from his conviction(s). *See Sandin*, 515 U.S. at 472; *Ingraham*, 94 F. App'x 273. Plaintiff, therefore, fails to state a due process claim arising from the misconduct convictions.

Plaintiff also contends that Defendant Mansfield failed to take corrective action after Plaintiff complained about the conduct of his subordinates. As the Court held above, a supervisor may not be held liable for the unconstitutional conduct of his subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899. Plaintiff has failed to allege that Defendant Mansfield engaged in any active unconstitutional behavior. Consequently, he fails to state a claim against Defendant Mansfield.

In summary, Plaintiff fails to state a claim against Defendants Mansfield, Horton, Bailey and Thompson. Thus, they must be dismissed from this action.

### F. Defendant Pawley

Plaintiff alleges that Defendant Pawley repeatedly harassed him and treated him in a degrading manner, including an incident when he told nurse Amy that Plaintiff wanted Pawley to see his (Plaintiff's) penis. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement

or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.")

Moreover, circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement for an Eighth Amendment claim because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily

appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation). Consequently, Pawley's alleged verbal harassment fails to state an Eighth Amendment claim.

Plaintiff also suggests that Defendant Pawley put him in danger by referring to Plaintiff's CSC convictions in the housing unit where other prisoners could hear him. The Eighth Amendment protects an inmate from prison officials' deliberate indifference to a substantial risk of serious harm to that inmate. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods*, 110 F.3d at 1222. Plaintiff does not allege that he was threatened, attacked or subjected to any risk of harm as a result of Pawley's alleged conduct. Thus, Plaintiff's allegation is insufficient to state an Eighth Amendment claim.

Plaintiff further claims that Defendant Pawley made the following threat in retaliation for Plaintiff's grievances against him, "keep kiting cup cake its not gone help you, just like nobody gone be able to help you if you ever go to Round Unit I will be waiting." (Compl. Page ID#9.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). With regard to the second requirement, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so vague or *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. In this case, Defendant Pawley's threat was vague and contingent on Plaintiff's transfer to Round Unit, which never occurred. In the absence of a more specific threat, Plaintiff fails to allege the sort of adverse action that would support a retaliation claim against Pawley.

Plaintiff also contends that Pawley improperly seized and disposed of his personal property, which implicates the Due Process Clause. However, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because

Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Defendant Pawley will be dismissed from this action for failure to state a claim.

G. **Defendants Williams, McDonald and John Doe Hearings Investigator**

Plaintiff maintains that Defendants Williams and McDonald repeatedly harassed him and took various actions against him in retaliation for Plaintiff's grievances against them, including

a false misconduct charge for possession of a weapon. In addition, Plaintiff alleges that the John Doe Hearing Investigator failed to properly investigate the charge.

As discussed above, verbal harassment does not rise to the level of an Eighth Amendment violation. *See Ivey*, 832 F.2d at 954-55; *Johnson*, 357 F.3d at 546. Moreover, Plaintiff cannot sustain a due process clause against Defendants Williams, McDonald or the John Doe Hearings Investigator with regard to the misconduct charge for possession of a weapon because he does not have a liberty interest in the misconduct proceedings. *See Thomas*, 481 U.S. at 434. Moreover, Plaintiff has not identified any significant deprivation arising from his convictions. *See Sandin*, 515 U.S. at 472; *Ingraham*, 94 F. App'x 273. Because Plaintiff does not make any further allegations against the John Doe Hearings Investigator, he will be dismissed from this action for failure to state a claim. However, the Court finds that Plaintiff states one or more retaliation claims against Defendants Williams and McDonald.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against all of the Defendants will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), except for Plaintiff's retaliation claims against Defendants Williams and McDonald. Consequently, the Court will serve the complaint against Defendants Williams and McDonald.

An Order consistent with this Opinion will be entered.

Dated: November 18, 2014            /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE